UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
DAVON BATTEE,                                   :
                                                :
                          Petitioner,           :        **MEMORANDUM AND ORDER**
                                                :
          - against -                           :
                                                :        1:04-cv-04334-ENV
WILLIAM PHILLIPS, Superintendent, Green         :
Haven Correctional Facility,                    :
                                                :
                          Respondent.           :
                                                :
-------------------------------------------------------------X

VITALIANO, D.J.

          In 2000, petitioner Davon Battee was convicted of first degree manslaughter and

sentenced to 25 years in prison, plus a consecutive sentence of 16 months to four years for

violation of parole on a prior offense. In October 2004, Battee filed a timely *pro se* habeas

corpus petition pursuant to 28 U.S.C. § 2254 claiming that his constitutional rights were violated

at his trial by: (1) ineffective assistance of counsel; (2) the court's refusal to charge the jury on

the defense of justification or the lesser included offense of second degree manslaughter; (3) the

court's refusal to permit petitioner to retake the stand and continue testifying after the close of

the proof; and (4) the admission of certain evidence. Battee also asserts in the petition that his

sentence was excessive and should be reduced in the interest of justice. For the reasons set forth

below, habeas relief is denied.

## **BACKGROUND**

          On the afternoon of March 15, 1999, Calvin Chadwick ("Chadwick") was stabbed to

death while running a game of three-card Monte on Fulton Street in downtown Brooklyn. Battee

and his girlfriend, Narookia Johnson ("Johnson"), were both present. Battee was later indicted

1

on two counts of second degree murder (intentional and depraved) and criminal possession of a weapon in the fourth degree. As a result of these charges, petitioner was also charged with violating the terms of his existing parole.

At Battee's jury trial in Kings County Supreme Court, witnesses for the prosecution testified that Battee and Chadwick had gotten into an argument over the card game. When Chadwick turned to walk away, Battee pulled out a knife and stabbed him in the back. That stroke of the knife, which caused a four-inch deep wound, pierced Chadwick's heart and killed him. As Chadwick fell to the ground, Battee straddled him and stabbed him twice more, until Johnson pulled him off and they fled. Bystanders, including two eyewitnesses, followed Battee into the nearby office of the Department of Motor Vehicles and alerted police. A third eyewitness administered first aid to Chadwick until an ambulance arrived.

In his own defense, Battee testified that Chadwick had tried to grab his girlfriend's money out of her hand and that, when petitioner confronted him, he was restrained by two people while Chadwick punched him in the face. Battee, who had previously been slashed in the face in an unrelated incident, broke free after he heard the clicking sound of a box cutter opening, then pulled out his own knife and brandished it while facing about seven armed assailants. Someone else approached him from behind and made a slashing motion towards his face with a straight razor, at which point, he claims, he blacked out. When he regained "consciousness," he found that he was straddling Chadwick and that his knife had no blood on it. Battee testified that he did not recall stabbing Chadwick, and vaguely theorized that the blood police found on his knife, relied on by the prosecution as evidence of his guilt, was "planted" by "somebody." (Tr. at 305). Nonetheless, petitioner never outright denied that he had used his knife to wound Chadwick. Johnson testified that she covered her eyes for much of the incident and did not see the stabbing.

2

At the conclusion of the prosecution's cross-examination of Battee, defense counsel announced that he had no questions on redirect, and Battee stepped down. Later, after both sides had rested and the jury was excused, defense counsel informed the court that Battee had asked to retake the stand to testify about "one particular point" (which counsel did not describe). (Tr. at 334). However, counsel represented that Battee had acquiesced to his advice and no longer insisted on testifying again. Notwithstanding, at the conference that followed, Battee directly asked the court if he could retake the stand, and his request was denied. The next morning, he asked the court for the second time to allow him to continue testifying, to which the court replied "I think you should confer with your attorney before you ask me questions like that," then summoned the jury into the courtroom and directed defense counsel to deliver his closing remarks. (Tr. at 345-46). At the conclusion of the defense summation, Battee yet again requested that he be permitted to retake the stand. The court instructed him to consult with his attorney and warned him that only his attorney could speak on his behalf in court. During the prosecution's summation, Battee once more voiced his desire to resume the stand. The court refused and removed him from the courtroom. At no point did the court inquire regarding the substance of the proposed additional testimony, nor did petitioner or counsel advise the court what it was.

At the charging conference, the court informed the parties that he planned to instruct the jury on intentional murder and first degree manslaughter as a lesser included offense of intentional murder. The defense then requested an additional lesser included offense of manslaughter in the second degree to be charged. The court declined, noting also that he did not intend to instruct the jury regarding depraved indifference murder although it was charged in the indictment, stating: "I can't see any basis to submit a charge of reckless manslaughter.

[Otherwise,] I would also submit depraved indifference murder, since it is a lesser charge of [that charge]. The evidence is consistent with several stab wounds of the deceased, went into the heart, four inches into the body." (Tr. at 336). The court also denied the defense's request for an instruction regarding the defense of justification, stating that "the law of justification is invoked when the defendant claims he used the force to defend himself. In this case the only force that he is talking about using to defend himself is punching. He never said that he used the knife to defend himself. He never admits stabbing the victim using deadly physical force . . . And his state of mind regarding using that force is that he blacked out, and he doesn't acknowledge that he used it. He also claimed that the police planted the DNA evidence on him, and raised the issue as to whether that knife was ever used in the stabbing." (Tr. at 340).

The jury acquitted Battee of murder, but found him guilty of manslaughter in the first degree. On April 25, 2000, the court sentenced him consecutively on the conviction counts of first degree manslaughter and violating parole.

Battee appealed to the Appellate Division, Second Department. Through counsel, he claimed that his rights to due process, a fair trial and to present a defense were violated by the trial court's refusal to charge the jury on justification or second degree manslaughter, and that he was deprived of the right to testify in his own defense by the court's refusal to reopen the proof so that petitioner could testify further on redirect. In a separately submitted *pro se* brief, Battee raised four additional points: (1) due process was violated by the admission of a suggestive identification at trial; (2) due process was violated when the prosecutor failed to timely disclose a witness's complete criminal history; (3) he was denied effective assistance of counsel and a fair trial because his trial counsel failed to reasonably investigate and prepare for trial and to make applicable objections; and (4) his sentence warranted modification in the interest of justice.

4

On September 29, 2003, the conviction was affirmed. See People v. Battee, 308 A.D.2d 596, 665 N.Y.S.2d 515 (2d Dep't 2003). The Second Department found that the trial court had properly refused to charge the jury on the defense of justification because the elements of that defense could not be established under any reasonable view of the evidence. See id., 308 A.D.2d at 596, 665 N.Y.S.2d at 516. Battee's claim that the jury should have been instructed on the lesser included offense of second degree manslaughter was deemed unpreserved for appellate review, but the Second Department reached the merits anyway and similarly found that no reasonable view of the evidence "considered in the light most favorable to [Battee] supports a finding that [he] acted recklessly." Id. (citations omitted). As to the claim that the trial court had erred in refusing to permit Battee to retake the stand, the Second Department held that, under the circumstances, "the trial court providently exercised its discretion in denying the defendant's request." 308 A.D.2d at 596-97, 665 N.Y.S.2d at 516. Finally, the Second Department dismissed the claims raised in Battee's *pro* se brief as "either [ ] unpreserved for appellate review or without merit." 308 A.D.2d at 597, 665 N.Y.S.2d at 516.

Battee's application for leave to appeal to the Court of Appeals was denied on December 29, 2003. See People v. Battee, 1 N.Y.3d 568, 807 N.E.2d 898, 775 N.Y.S.2d 785 (2003). On October 4, 2004, he filed the instant petition.

## STANDARD OF REVIEW

This petition is subject to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides that a federal writ of habeas corpus may not be granted to a state prisoner with respect to any claim that was adjudicated on the merits by a state court unless the decision was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "based on an

5

unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d); see Williams v. Taylor, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 1523 (2000) (under AEDPA, habeas relief is only available if "the state court arrive[d] at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decide[d] a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." (citation omitted)).

In the AEDPA context, the term "clearly established federal law" is construed as "'refer[ring] to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions.'" Carey v. Musladin, 549 U.S. 70, 74, 127 S. Ct. 649, 653 (2006) (quoting Williams, 529 U.S. at 412, 120 S. Ct. at 1523). Further, to be "clearly established" under AEDPA, federal law must be "law that is 'dictated by [Supreme Court] precedent existing at the time the defendant's conviction became final.'" McKinney v. Artuz, 326 F.3d 87, 96 (2d Cir. 2003) (citation omitted). A state court's "unreasonable application" of law must have been more than "incorrect or erroneous"; it must have been "objectively unreasonable." Sellan v. Kuhlman, 261 F.3d 303, 315 (2d Cir. 2001) (internal quotation marks omitted).

## DISCUSSION

### A. Ineffective Assistance of Counsel

Petitioner raised his claim of ineffective assistance of trial counsel on direct appeal, and the Second Department summarily dismissed it as one of several contentions that were "unpreserved for appellate review or without merit." Battee, 308 A.D.2d at 597, 665 N.Y.S.2d at 516. Respondent concedes that an ineffective assistance of counsel claim need not be preserved for appeal and, accordingly, that the Second Department adjudicated petitioner's ineffective assistance claim on its merits. The Court therefore applies AEDPA deference to review the

claim's disposition. See Jimenez v. Walker, 458 F.3d 130, 146 (2d Cir. 2006); Ryan v. Miller, 303 F.3d 231, 246 (2d Cir. 2002).

According to petitioner, his trial counsel spent less than 20 minutes total conferring with him about the underlying facts of the case prior to trial, and failed to review all relevant material available to him. Petitioner argues that, because of this inadequate preparation, counsel missed opportunities to impeach certain witnesses on cross-examination by pointing out discrepancies between their trial testimony and prior statements. Further, petitioner contends that counsel failed to call expert witnesses and character witnesses who could have bolstered the defense, although petitioner had sent counsel a detailed letter outlining these possibilities. Finally, petitioner argues that counsel should have objected to the prosecutor's multiple misstatements of fact and characterization of petitioner as a "murderer" in his summation.

In Strickland v. Washington, the Supreme Court held that "the proper standard for attorney performance is that of reasonably effective assistance." 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). Under Strickland, to establish ineffective assistance of counsel, a habeas petitioner must "(1) demonstrate that his counsel's performance fell below an objective standard of reasonableness in light of prevailing professional norms; and (2) affirmatively prove prejudice arising from counsel's allegedly deficient representation." Carrion v. Smith, 549 F.3d 583, 588 (2d Cir. 2008) (quoting United States v. Cohen, 427 F.3d 164, 167 (2d Cir. 2005)) (internal quotation marks omitted). To successfully establish the performance prong, a habeas petitioner must overcome "a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance," Brown v. Greene, 577 F.3d 107, 110 (2d Cir. 2009) (internal quotation marks omitted), with a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland,

7

466 U.S. at 687, 104 S. Ct. at 2064. To successfully establish the "prejudice" prong, the petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id., 466 U.S. at 694, 104 S. Ct. at 2068.

For the purposes of AEDPA, it is well-settled that the Strickland standard constitutes the pertinent "clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); see Aparicio v. Artuz, 269 F.3d 78, 95 & n. 8 (2d Cir. 2001); Sellan, 261 F.3d at 315. Thus, on habeas review, the question before the Court is not whether, as a de novo matter, the Court finds counsel to have been effective or ineffective; rather, the relevant question is whether the state court decision addressing the issue involved an "unreasonable application" of the Strickland standard to the facts of the petitioner's case. See Sellan, 261 F.3d at 314-15 & n 6.

The Court finds that the denial of petitioner's appeal with respect to his ineffective assistance of trial counsel claim was neither contrary to, nor an unreasonable application of, the holding in Strickland or its progeny. The instances of counsel's allegedly ineffective performance cited by petitioner fall within the ambit of trial strategy decisions. See United States v. Nersesian, 824 F.2d 1294, 1321 (2d Cir. 1983) ("The decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial . . . . Decisions whether to engage in cross-examination, and if so to what extent and in what manner, are similarly strategic in nature."). Here, counsel's decision not to call witnesses to testify as to petitioner's peaceful and law-abiding character followed a ruling by the court that character testimony would open the door for the prosecution to ask questions about petitioner's juvenile criminal record. Such

strategic choices, if reasonable, will not constitute a basis for an ineffective assistance claim, even if the petitioner disagreed with them contemporaneously or with the benefit of hindsight. See Strickland, 466 U.S. at 690-91, 104 S.Ct. at 2066 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."). Counsel's actions or omissions fall outside the range of reasonableness only if they "cannot be explained convincingly as resulting from a sound trial strategy, but instead arose from oversight, carelessness, ineptitude, or laziness." Eze v. Senkowski, 321 F.3d 110, 112 (2d Cir. 2003). There is no indication of such egregious misconduct in this case – to the contrary, the soundness of defense counsel's strategy is underscored by the fact that, after a trial in which multiple eyewitnesses testified that they saw petitioner stab another man in the back as he turned away from an altercation, petitioner was acquitted of the charge of intentional murder and convicted of the lesser offense of manslaughter in the first degree.

Further, even if petitioner could establish ineffective performance, he still could not and has not shown prejudice. In assessing prejudice stemming from counsel's failure to investigate and introduce certain evidence, a court must consider "all the relevant evidence that the jury would have had before it" had the evidence been introduced, including unfavorable evidence. See Wong v. Belmontes, 130 S.Ct. 383, 386 (2009) (per curiam) (emphasis in original). In light of the overwhelming inculpatory evidence against petitioner at trial, including petitioner's witness-stand admission that he was present with a knife at the time and place of the homicide and forensic evidence tying the knife petitioner admits he had to the victim's blood, the Court finds no reasonable probability that the outcome of the trial would have been different but for

9

counsel's alleged errors. Accordingly, petitioner's claim of ineffective assistance of counsel is dismissed.

## B. Denial of Requested Jury Charges

### 1. Justification

Battee contends that he was denied due process, a fair trial and the right to present a defense by the trial court's refusal to charge the jury on the defense of justification. On direct appeal, the Second Department deemed petitioner's claim that the court should have charged justification to be meritless. See Battee, 308 A.D.2d at 596, 665 N.Y.S.2d at 515. To obtain a writ of habeas corpus "on the ground of error in a state court's instructions to the jury on matters of state law, the petitioner must show . . . that the error violated a right guaranteed to him by federal law." Blazic v. Henderson, 900 F.2d 534, 540 (2d Cir. 1990) (quoting Casillas v. Scully, 769 F.2d 60, 63 (2d Cir. 1985)); see also Cupp v. Naughten, 414 U.S. 141, 146, 94 S. Ct. 396, 400 (1973) (noting that a petitioner must show "not merely that the instruction is undesirable, erroneous, or even universally condemned," but that it violated due process. (internal quotation marks omitted)). In accordance with this principle, it is settled law in the Second Circuit that a habeas writ sought on the ground of a state trial court's refusal to provide a jury instruction may issue only when three requirements are satisfied: (1) petitioner must demonstrate that he was "erroneously deprived of a jury instruction to which he was entitled under state law," Davis v. Strack, 270 F.3d 111, 123 (2d Cir. 2001); (2) the omission of the instruction must have "so infected the entire trial that the resulting conviction violates due process," id. at 131 (quoting Cupp, 414 U.S. at 147, 94 S. Ct. at 400); and (3) the trial court's refusal to instruct, and/or the appellate court's affirmance of the conviction, must constitute objectively unreasonable applications of the Supreme Court's rulings on due process. Id. at 124. Since the Court finds

10

that petitioner was not entitled to a jury instruction on justification under New York law and, concomitantly, that the trial court's omission of the charge was not erroneous, it is unnecessary for the Court to reach the second and third prongs of the <u>Davis</u> test. <u>See</u> 270 F.3d at 123.

As to the first prong, New York Penal Law § 35.15(1) establishes that "[a] person may . . . use physical force upon another person when and to the extent he or she reasonably believes such to be necessary to defend himself . . . from what he . . . reasonably believes to be the use or imminent use of unlawful physical force by such other person." Additionally, the statute specifies that an individual's use of <u>deadly</u> physical force against another person is justifiable only when he reasonably believes that the "other person is using or about to use deadly physical force." N.Y. Penal Law § 35.15(2)(a). Thus, to establish the defense of justification under New York law, a defendant who used deadly physical force on someone "must show both that he subjectively believed that deadly force was necessary under the circumstances and that a reasonable person in his situation would have held this belief." <u>Blazic</u>, 900 F.2d at 540 (<u>citing</u> <u>People v. Goetz</u>, 68 N.Y.2d 96, 115, 506 N.Y.S.2d 18, 29-30, 497 N.E.2d 41, 52 (1986)). Further, as a general matter, "[e]ven if a defendant reasonably believed that deadly force was necessary, his actions were not justified if he knew that he could, with complete safety, avoid using deadly force by retreating." <u>Id.</u> (<u>citing</u> N.Y. Penal Law § 35.15(2)(a)). The rule requiring retreat is subject to certain exceptions including, *inter alia*, circumstances in which the defendant reasonably believed that the aggressor was committing or attempting to commit a robbery. <u>See</u> N.Y. Penal Law § 35.15(2)(a)(ii)(b).

When evidence relating to the defense of justification is presented by a defendant in New York , "the [trial] court shall rule as a matter of law whether the claimed facts and circumstances would, if established, constitute [the] defense." N.Y. Penal Law § 35.05. "[I]f the record

11

includes evidence which, viewed in the light most favorable to the defendant and drawing all reasonably permissible inferences in his favor, satisfies the essential elements of the defense of justification, the [justification] charge must be given" to the jury. Davis, 270 F.3d at 125. On the other hand, "a court need not charge justification if no reasonable view of the evidence establishes the elements of the defense." People v. Reynoso, 73 N.Y.2d 816, 818, 537 N.Y.S.2d 113, 114, 534 N.E.2d 30, 31 (1988). It stands to reason that "a court is not required to adopt an artificial or irrational view of the evidence in deciding whether a justification charge is warranted." Blazic, 900 F.2d at 540 (citation omitted).

In petitioner's case, the trial court declined to charge justification to the jury based on its conclusion that no reasonable view of the evidence established the elements of the defense. According to petitioner's testimony, he had confronted Chadwick because he believed Chadwick was trying to rob his girlfriend, and Chadwick attacked petitioner while cursing and yelling at him. Chadwick and several other men then surrounded and beat petitioner. Petitioner struggled away, he said, when he heard one of his attackers pull out a weapon, took out his own knife, and was rushed from behind by someone who tried to slash him in the face with a razor. Thereafter, petitioner lost consciousness, and the stabbing of Chadwick followed. The trial court pointed out that, even crediting Battee's version of events entirely, petitioner had never testified that he stabbed Chadwick because he believed that Chadwick was about to use deadly physical force against him. Quite to the contrary, the court observed that petitioner had testified that he had no memory of stabbing Chadwick whatsoever. Additionally, the trial court noted that Battee had raised a defense that was inconsistent with justification – namely, that he had been framed, and had never committed the stabbing at all, much less in self-defense.

On direct appeal, petitioner argued that, if the jury perceived petitioner to be telling the truth, it could have found that he reasonably believed that deadly physical force was about to be used against him by a group of armed assailants and that he therefore acted justifiably to protect himself. Further, petitioner argued that, from the same standpoint, the jury could have found that petitioner was justified in using force to repel what he reasonably believed to be a robbery of his girlfriend. To the extent that the trial court based its decision on petitioner's assertion that he was innocent and had been framed, petitioner stated that a criminal defendant's entitlement to a jury charge on a claimed defense is not negated solely because it is inconsistent with the defendant's denial of guilt. Nonetheless, in its affirmance of defendant's conviction, the Second Department fully embraced the trial court's finding that a justification charge was uncalled for because no reasonable view of the record evidence supported the defense. See Battee, 308 A.D.2d at 596, 665 N.Y.S.2d at 515.

It is true, as petitioner contends, that a justification defense is not automatically precluded by a petitioner's assertion of innocence; as a general matter, a defendant can choose to argue multiple inconsistent defense theories in the alternative, any one of which may be accepted by the jury. See People v. Steele, 26 N.Y.2d 526, 529, 311 N.Y.S.2d 889, 891-92, 260 N.E.2d 527, 529 (1970). But, as the state trial and appellate courts both found, the justification charge was inapposite in petitioner's case because there was no reasonable basis in the actual evidence adduced at trial for the jury to conclude that the elements of the defense had been established. There is simply no indication in petitioner's testimony or anywhere else in the record that petitioner actually believed that it was necessary to use deadly physical force under the circumstances. See People v. Watts, 57 N.Y.2d 299, 302, 442 N.E.2d 1188, 1190, 456 N.Y.S.2d 677, 679 (1982) (no justification charge required because there was no basis for determining

whether defendant perceived an imminent threat of deadly physical force). The only way that the jury could have concluded that petitioner subjectively believed that he needed to use deadly force to protect himself against a gang of armed attackers, or to repel a robbery of his girlfriend, would have been by speculation. "A justification instruction is obviously not required if a jury would have to speculate to find that the defense is valid." Deleon v. Lempke, No. 09-cv-231, 2009 WL 4498006, at *3 (E.D.N.Y. Dec. 2, 2009) (citing People v. Alston, 104 A.D.2d 653, 654, 480 N.Y.S.2d 115, 116 (2d Dep't 1984)).

Further, "even if [petitioner] had actually believed that he had been threatened with the imminent use of deadly physical force . . . the jury could not rationally conclude that his reactions were those of a reasonable man acting in self-defense" or anyone else's defense. Reynoso, 73 N.Y.2d at 818, 537 N.Y.S.2d at 114, 534 N.E.2d at 31 (internal quotation marks omitted). Petitioner testified that, in the course of the melee that preceded Chadwick's stabbing, Chadwick tried to rob petitioner's girlfriend and punched petitioner in the face, and some other men threatened petitioner with knives and/or razors. But petitioner never testified that he had any basis to think that Chadwick was even armed, much less about to inflict deadly physical force on petitioner or his girlfriend. And, given the nature and extent of the wounds that Chadwick sustained, petitioner's stabbing of Chadwick plainly exceeded the bounds of what might reasonably be considered defensive actions. See People v. Collins, 290 A.D.2d 457, 458, 736 N.Y.S.2d 109, 111 (2d Dep't 2002) (no justification charge required because "the number, depth, and severity of the [stab] wounds inflicted upon the victim belie the defendant's claim that he did not stab her intentionally and that the victim was stabbed while he was fighting to get the knife away from her"); People v. Braithwaite, 276 A.D.2d 707, 714 N.Y.S.2d 754 (2d Dep't 2000) (no justification charge required because "[j]ustification is a defense only to the use of

14

such force as is reasonably believed necessary to repel the threat," and even viewed in the light most favorable to the defendant, "there could be no justification for the defendant stabbing the complaining witness in the torso with an ice pick five or six times").

As a consequence, Battee's prayer for habeas relief based on the trial court's refusal to charge the jury on the defense of justification is groundless.

## 2. Second Degree Manslaughter

Petitioner also asserts that his rights were violated by the trial court's refusal to charge the jury on the lesser included offense of second degree manslaughter. On direct appeal, the Second Department found this claim to be unpreserved for appellate review. See Battee, 308 A.D.2d at 596, 665 N.Y.S.2d at 516 (citing N.Y. Crim. Proc. Law §§ 300.50(1) (procedural rule providing that a criminal defendant waives any error by the court with respect to submission of a lesser included offense to the jury "unless he objects thereto before the jury retires to deliberate"), 470.05(2) (procedural rule requiring contemporaneous objection to preserve for appeal any "question of law with respect to a ruling or instruction of a criminal court during a trial or proceeding"); People v Davis, 300 A.D.2d 673, 751 N.Y.S.2d 887 (2d Dep't 2002)). Notwithstanding, the Second Department added that "[i]n any event, no reasonable view of the evidence considered in the light most favorable to the defendant supports a finding that the defendant acted recklessly." Id. (citations omitted)).

A state court's explicit reliance on a procedural bar preventing adjudication of the merits of a claim generally constitutes an independent and adequate state law ground for the state court's judgment preventing federal review. See Harris v. Reed, 489 U.S. 255, 260, 109 S. Ct. 1038, 1042 (1989) (explaining rationale for habeas procedural default rule); Coleman v. Thompson, 501 U.S. 722, 733, 111 S. Ct. 2546, 2556 (1991) (same). However, in this specific

instance, the Court finds that rule to be inapplicable. The Second Department did not explain how it arrived at the conclusion that petitioner had not preserved for appeal his claim regarding the omitted second degree manslaughter instruction, and the record demonstrates that petitioner in fact did comply with the procedural rules that the Second Department cited – the trial transcript reflects that defense counsel made a specific and timely request to the trial court for a jury charge on the lesser included offense of second degree manslaughter, and the court duly considered and rejected the request for reasons that were stated on the record at the charge conference.[1] (Tr. at 336). Thus, it appears that the Second Department incorrectly invoked the procedural bar here and, as such, it is inadequate to preclude federal habeas review of the claim on the merits.[2] See, e.g., Ojar v. Greene, No. 07-cv-3674, 2008 WL 428014, at *8-*9 (E.D.N.Y. Feb. 15, 2008) (procedural bar deemed inadequate where Appellate Division found habeas petitioner's "claim of prosecutorial misconduct to be unpreserved for appellate review, but gave no indication as to why," and the record reflected that the petitioner had in fact clearly and contemporaneously objected to the prosecutor's conduct); Clarke v. Goord, No. 07-CV-366 BMC), 2007 WL 2324965, at *2 (E.D.N.Y. Aug. 10, 2007) (state court's misapplication of procedural bar deemed inadequate to preclude habeas review of right-to-counsel claim).

Regardless, petitioner's claim that he was erroneously denied a jury charge on second degree manslaughter does not raise a question of federal law cognizable on habeas review. In

---

[1] While the Second Department perhaps may have determined that the objection was somehow withdrawn after it was made, the Court finds no clear statement of such a withdrawal in the record.

[2] Federal review of a procedurally defaulted claim is not barred when: (1) the petitioner can show "cause for the default and actual prejudice as a result of the alleged violation of federal law," Coleman, 501 U.S. at 750, 111 S. Ct. at 2565; (2) a fundamental miscarriage of justice would result from a failure to review the merits of the claim due to the actual innocence of the petitioner, see Dunham v. Travis, 313 F.3d 724, 730 (2d Cir. 2002); and/or (3) the procedural rule, as applied to the petitioner's claim specifically, does not constitute an "adequate" state law ground. See Ojar v. Greene, No. 07-cv-3674, 2008 WL 428014, at *3 (E.D.N.Y. Feb. 15, 2008). A state court's incorrect application of a procedural default rule falls into the third category. See id. at *9 (citing Brown v. Sec'y for Dept. of Corr., 200 F. Appx. 885, 888-89 (11th Cir. 2006); Clarke v. Goord, No. 07-cv-366, 2007 WL 2324965, at *2 (E.D.N.Y. Aug. 10, 2007)). In any event, the Second Department alternatively ruled on the merits of this failure to charge claim, rejecting it.

Beck v. Alabama, the United States Supreme Court held that a trial court's failure to submit lesser included offenses to a jury violates due process in capital cases, but the court expressly reserved the question of whether its holding applies in noncapital cases. See 447 U.S. 625, 638 n.14, 100 S. Ct. 2382, 2390 n.14 (1980). In Knapp v. Leonardo, the Second Circuit noted that neither it nor the Supreme Court had yet "decided whether the failure to instruct the jury on lesser included offenses in noncapital cases is a constitutional issue that may be considered on a habeas petition." 46 F.3d 170, 179 (2d Cir. 1995). The Circuit went even further, in Jones v. Hoffman, 86 F.3d 46 (2d Cir. 1996) (per curiam), by holding that it was precluded from considering the issue on habeas review because extension of the Beck holding to noncapital cases "would involve the announcement of a new [constitutional] rule," which is generally disallowed on habeas review. Jones, 86 F.3d at 48 (citing Turner v. Marshall, 63 F.3d 807, 819 (9th Cir. 1995)); see generally Teague v. Lane, 489 U.S. 288, 316, 109 S. Ct. 1060, 1078 (1989) ("[H]abeas corpus cannot be used as a vehicle to create new constitutional rules of criminal procedure unless those rules would be applied retroactively to all defendants on collateral review."). For district courts in this Circuit, then, the effect of Knapp and Jones is to preclude habeas review of a state trial court's failure to instruct on lesser included offenses in noncapital cases. See Sullivan v. O'Keefe, No. 00-cv-2292, 2000 WL 1072304, at *5 (S.D.N.Y. Aug. 2, 2000); Peakes v. Spitzer, No. 04-cv-1342, 2004 WL 1366056, at *12 (S.D.N.Y. Jun. 16, 2004) (collecting habeas cases showing the uniform rejection of lesser included offense claims by district courts in the Second Circuit). Accordingly, Battee's lesser included offense claim cannot be a basis for habeas relief, and is dismissed.

17

## C. Refusal to Permit Petitioner to Testify Further After Close of the Proof

Although petitioner testified and was cross-examined at trial, he contends that his constitutional right to testify in his own defense was violated by the trial court's refusal to accede to his desire to retake the stand for more questioning on redirect. On direct appeal, the Second Department rejected this claim on the merits, holding that the ruling was a proper exercise of the court's discretion "[u]nder the circumstances of this case, where the defendant agreed not to testify a second time." Battee, 308 A.D.2d at 596-97, 665 N.Y.S.2d at 516. See generally N.Y. Crim. Proc. Law § 260.30 (establishing order of proof at trial); People v. Olsen, 34 N.Y.2d 349, 353, 313 N.E.2d 782, 784, 347 N.Y.S.2d 487, 490 (1974) (trial court retains discretion to adjust the "order of proof in its discretion and in furtherance of justice" (internal quotation marks omitted)). Applying AEDPA deference, the Court finds this to be neither contrary to nor an unreasonable application of clearly established federal law.

It is obviously beyond cavil that "[t]he right to testify on one's own behalf at a criminal trial . . . . is one of the rights that are essential to due process of law in a fair adversary process." Rock v. Arkansas, 483 U.S. 44, 51, 107 S. Ct. 2704, 2708-09 (1987) (internal quotation marks omitted). It is also well established that the trial judge is afforded considerable discretion in ensuring that the trial is conducted in a fair, efficient, and orderly manner. See, e.g., Taylor v. Illinois, 484 U.S. 400, 414-15, 108 S. Ct. 646, 656 (1988). Accordingly, the Supreme Court has held that the right to testify may "bow to accommodate other legitimate interests in the criminal trial process," so long as any restrictions are not "arbitrary or disproportionate to the purposes they are designed to serve." Rock, 483 U.S. at 55-56, 107 S. Ct. at 2711 (internal quotation marks omitted). "The interest in orderly procedure is certainly a legitimate interest." Broadhurst v. West, No. 04 Civ. 10149, 2006 WL 89946, at *5 (S.D.N.Y. Jan. 1, 2006).

18

Here, petitioner availed himself of a full and fair opportunity to testify in his own defense, and willingly stepped down from the stand when the prosecution finished its cross-examination. His yen to speak more was not revealed until both sides had rested and prior to summations, when defense counsel told the court that Battee had said he wanted to go back on the stand but promptly retracted the statement. Petitioner then waited until the following day to renew the request, which he did via disruptive histrionics that ultimately got him ejected from the courtroom. Given these facts, the trial court did not offend petitioner's constitutional rights; "[n]o Supreme Court precedent establishes that a defendant has a right to reopen the case and testify after the close of all of the evidence." Broadhurst, 2006 WL 89946, at *5. Petitioner's claim for habeas relief based on wrongful denial of his right to testify is therefore dismissed. See id. (dismissing claim for habeas relief based on trial court's decision not to allow defendant to testify after both sides rested, which was affirmed by the Appellate Division as a valid exercise of discretion).

## D. Admission of "Suggestive Witness"

In petitioner's *pro se* habeas petition, he asserts as his fourth ground for relief that his rights to due process and a fair trial were violated "by the admission of the suggestive witness, in violation of constitutional amendment 5." (Pet. at 4). As noted above, Battee's *pro se* submission on direct appeal raised claims regarding, *inter alia*, admission of an unduly suggestive identification at trial and the prosecution's wrongful failure to timely disclose a witness's complete criminal history. The Court is unable to deduce whether petitioner intended to invoke either, both or neither of these claims when he referenced "the admission of the suggestive witness" in his habeas petition; both were summarily dismissed by the Second Department as "unpreserved for appellate review or without merit." Battee, 308 A.D.2d at 597,

19

665 N.Y.S.2d at 516. Giving petitioner the benefit of the doubt, the Court will assume that petitioner meant to refer to both of the claims and will address each one, as respondent did.

1. Suggestive Identification

Shortly after Chadwick's stabbing, a police detective walked over to the DMV office (where petitioner was being interrogated) with a woman who had been present at the scene of the crime, Barbara Wilcox ("Wilcox"), and told her to wait outside. A few minutes later, petitioner was brought out of the DMV in handcuffs, and Wilcox pointed him out to the detective as the perpetrator. During petitioner's trial, the defense unsuccessfully moved to exclude testimony regarding this out-of-court identification. On direct appeal, petitioner asserted, again unsuccessfully, that the trial court's ruling violated due process. Respondent concedes that the suggestive identification claim was properly preserved at trial and, thus, that the Second Department's adjudication of the claim was on the merits and should be reviewed with AEDPA deference. See Jimenez, 458 F.3d at 146; Ryan, 303 F.3d at 246.

"When the prosecution offers testimony from an eyewitness to identify the defendant as a perpetrator of the offense, fundamental fairness requires that that identification testimony be reliable." Raheem v. Kelly, 257 F.3d 122, 133 (2d Cir. 2001). The admission of identification testimony violates due process only when the identification is "so unnecessarily suggestive and conducive to irreparable mistaken identification that [the defendant] was denied due process of law." United States v. Bautista, 23 F.3d 726, 729 (2d Cir. 1994) (internal quotation marks omitted). To assess whether an identification violated due process, a court engages in a two-part inquiry. As an initial matter, the court determines whether the identification procedure was "unnecessarily suggestive." Id. at 729-30. If the court finds that it was, the court proceeds to decide "if, when viewed in the totality of the circumstances, [the out-of-court identification]

20

possesses sufficient indicia of reliability." Id. (internal quotation marks omitted). In considering reliability, the court will generally look to the following: (1) the opportunity of the witness to view the perpetrator at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the perpetrator; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. See Brisco v. Ercole, 565 F.3d 80, 89 (2d Cir. 2009). On the other hand, if the court finds that the identification procedure was not unnecessarily suggestive, "no further inquiry by the court is required, and [t]he reliability of properly admitted eyewitness identification, like the credibility of other parts of the prosecution's case, is a matter for the jury." Raheem, 257 F.3d at 133 (internal quotation marks omitted).

Clear and convincing precedent illustrates that the identification procedure here was not unnecessarily suggestive. Although petitioner's *pro se* appeal brief is less than clear, the thrust of his argument appears to be that the identification in question was improper because it took place while petitioner was handcuffed and surrounded by police officers. This does not, without more, constitute unnecessarily suggestive circumstances. See Bautista, 23 F.3d at 729-32 (identification not unnecessarily suggestive where defendant was presented to the witness "in handcuffs; at night; in the custody of police officers; with his face lit by flashlights; and in the presence of [an officer] who, each time the [witness] identified a suspect, radioed to his fellow officers, 'it's a hit'"); United States v. Butler, 970 F.2d 1017, 1021 (2d Cir. 1992) (identification proper where suspects were brought to victim who was sitting in a police car), cert. denied, 506 U.S. 980, 113 S.Ct. 480 (1992). The Second Circuit has observed that showing a suspect singly to a witness for the purpose of identification shortly after a crime – commonly known as a

"showup" – is a valuable investigative technique that serves valid law enforcement purposes.[3]
See Bautista, 23 F.3d at 730 (showup serves the "very valid function" of "prevent[ing] the
mistaken arrest of innocent persons"); United States v. Zelker, 455 F.2d 714, 716 (2d Cir.1974)
("[P]rompt confrontation [is] desirable because it serve[s] to insure the immediate release of an
innocent suspect and at the same time enable[s] the police to resume the search for the fleeing
culprit when the trail is fresh"). Thus, courts on habeas review have generally found showups
not unnecessarily suggestive where they "occurred within temporal and geographic proximity to
the crime." Warren v. Conway, No. 07 Civ. 4717, 2008 WL 4960454, at *23 (E.D.N.Y. Nov.
18, 2008) (showup took place one mile from and 90 minutes after the crime); Charlemagne v.
Goord, No. 05 Civ. 9890, 2008 WL 2971768, at *15 (S.D.N.Y. June 30, 2008) (showup within
30 minutes and 18 blocks from the crime) (citing cases); Corchado v. Rabideau, 576 F. Supp. 2d
433, 450 (W.D.N.Y. 2008) ("The fact that the show-up occurred within 30 minutes of the
shooting and in reasonably close proximity to the scene of the crime favors a finding that the
procedure was not unduly suggestive and was, instead, the product of effective police work.").

Petitioner also seems to argue in his appeal brief that the identification should have been
excluded because Wilcox testified that she had recognized him as the perpetrator based on the
jacket he was wearing, although there was testimony in the record that there were two men at the
scene of the crime who were both about the same height and complexion as petitioner and

---

[3] The Court notes that the trial court's denial of petitioner's motion to exclude the identification testimony appears to
have been based in large part on the court's finding that the witness in question had not actually participated in a
formal police-arranged identification procedure. For present purposes, however, this distinction is neither here nor
there. "The federal standard does not ask whether the suggestive procedure was orchestrated by the police."
Richardson v. Superintendent of Mid-Orange Corr. Fac., 639 F. Supp. 2d 266, 286 (E.D.N.Y. 2009) (collecting
cases). Rather, when deciding claims of suggestive identification in the habeas context, federal courts focus on "the
effects, rather than the causes, of suggestive encounters." Id. at 287 n.8. Accordingly, the fact that the "showup"
here may have occurred by happenstance rather than premeditated police design does not change the due process
analysis. See, e.g., Allen v. New York, No. 07 Civ. 0023, 2010 WL 811715, at *4 (W.D.N.Y. Mar. 1, 2009)
(collecting cases) (showup not unduly suggestive where witness was brought to police station to give a statement,
inadvertently encountered petitioner in a vestibule, and volunteered to officers that she recognized petitioner as the
perpetrator).

wearing similar jackets, and additionally, Wilcox did not identify him as the perpetrator in the courtroom during trial. This argument goes to the reliability of the identification evidence and, given the Court's finding that the identification at issue was not unnecessarily suggestive, the Court does not reach the question of whether or not it was independently reliable. Petitioner's suggestive identification claim is not sustained.

2. Prosecution's Failure to Timely Disclose Witness's Criminal History

Because the Second Department did not clearly and unambiguously rely on a state procedural ground in dismissing petitioner's claim regarding the prosecutor's belated disclosure of the criminal record of a prosecution witness, Timothy Hampton ("Hampton"), the Court assumes that it adjudicated this claim on the merits as well and applies AEDPA deference on review. See Jimenez, 458 F.3d at 138. Under any standard of review, however, this claim is baseless.

Petitioner asserted in his *pro se* appeal brief that the prosecutor's failure to turn over Hampton's complete criminal history violated petitioner's right, pursuant to the Sixth Amendment's Confrontation Clause, to effective cross-examination of adverse witnesses. But, as respondent points out, petitioner does not assert that relevant information regarding Hampton was actually withheld at trial, but merely that it should have been turned over sooner. In reality, the record indicates that the material at issue – specifically, information regarding Hampton's 11 misdemeanor gambling convictions and his use of four aliases – was disclosed to the defense in time to give Battee's trial counsel ample opportunity (which he seized) to use it during cross-examination. Accordingly, petitioner cannot possibly demonstrate prejudice as a result of any untimely disclosure by the prosecution, and is not entitled to habeas relief on this ground.

**E. Reduction of Sentence in the Interests of Justice**

As he did on direct appeal, petitioner asserts in his habeas petition that, under the circumstances, his sentence should be reduced in the interest of justice. As this claim rests exclusively on state law, it is not cognizable on habeas review. See 28 U.S.C. § 2254(d). Further, it is well-settled that a prison sentence cannot be found to violate the Eighth Amendment prohibition on cruel and unusual punishment by virtue of its length so long as it falls within the established statutory range. See White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992) ("No federal constitutional issue is presented where . . . the sentence is within the range prescribed by state law."). It is undisputed that petitioner's sentence is within the prescribed statutory range. Accordingly, petitioner's interests of justice claim for reduction of his sentence is also denied.

## CONCLUSION

For all of the foregoing reasons, the petition for a writ of habeas corpus is dismissed with prejudice and the writ is denied. Since petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue. See 28 U.S.C. § 2253(c)(2). Additionally, the Court certifies pursuant to 28 U.S.C. § 1915(a) that any appeal from this Memorandum and Order would not be taken in good faith and therefore *in forma pauperis* is denied for the purpose of any appeal. See Coppedge v. United States, 369 U.S. 438, 444-45, 82 S. Ct. 917, 920-21 (1962).

The Clerk of the Court is directed to enter judgment and to close this case.

**SO ORDERED.**

Dated: Brooklyn, New York
      May 19, 2010

/S/-

ERIC N. VITALIANO
United States District Judge